6567

STATE v. KENNY.

1. ATTORNEYS—CONTINUANCE.—It is not reversible error for trial Judge to appoint counsel for defendant charged with murder on day set for trial and to continue case to a later day, where defendant's retained counsel insists he cannot go on with trial because of illness, defendant does not accept counsel appointed, but retained counsel appears on second day fixed and goes on with trial.

2. DISCRETION.—CONTINUING OR BRINGING A CASE TO TRIAL is discretionary with trial Judge.

3. PRACTICE—PRISONER.—Placing one or two constables about a prisoner in the court room, charged with murder, who had attempted once or twice to escape, does not tend to unduly influence the jury to his prejudice.

4. IBID.—SEVERANCE is often necessary in criminal case and is discretionary with trial Judge.

5. EVIDENCE—CONSPIRACY—DECLARATIONS.—After order of severance and during trial of one of three persons charged with murder, declarations of one charged in the indictment, but not then on trial, made during commission of act are admissible against one on trial.

6. IBID.—CONTRADICTION.—Under charge of murder it is competent to ask defendant if he had in his possession since the homicide the watch of deceased and to contradict him upon denial.
   *State* v. *Wyse,* 33 S. C., 582, *distinguished from this case.*

7. MURDER—AIDING AND ABETTING—CHARGE.—Where two or more are charged in indictment with homicide and severance has been granted and one alone put on trial, Judge may properly instruct jury the persons named in the indictment are charged with the offense and instruct them as to aiding and abetting and acting in concert in committing the crime.

Before PURDY, J., Charleston, November term, 1906. Affirmed.

Indictment against George Kenny, Alonzo Goodwin and Harmon Wilson for murder. George Kenny alone put on trial. From sentence he appeals.

*Messrs. W. Turner Logan* and *Jno. P. Grace,* for appellant. *Court has no right of its own motion to depose Summers and appoint other counsel:* Code, 1902, 2815-6. *Error to surround prisoner with armed guards during trial:* 76 S. C., 128; 10 Am. R., 296; 64 Mo., 590; 2 N. Met., 297. *It was an abuse of discretion to grant a severance and force prisoner to trial alone:* 49 S. C., 410. *It was an abuse of discretion to force defendant's counsel to trial while sick:* 50 S. C., 403. *Error to permit defendant to be contradicted on denial of taking watch:* 1 Green. Ev., secs. 451, 449; 33 S. C., 582. *Judge should have instructed jury if they concluded the other two killed deceased defendant was not guilty:* 47 S. C., 521; 59 S. C., 164.

*Solicitor W. St. Julien Jervey,* contra, cites: *Severance is in the discretion of the Court:* 5 Strob., 85; 7 Rich., 412; 13 Rich., 316; 14 S. C., 628; 49 S. C., 410. *Allegations that wounds were inflicted with a knife are sufficient:* 1 Arch. Cr. Pl. & Pr., 787; 1 Chitty Cr. L., 131. *Ability of counsel to go to trial is within discretion of trial Judge:* 58 S. C., 96; 26 S. C., 117; 52 S. C., 537; 61 S. C., 17. *Charge as to acting in pursuance of a common design proper:* 1 Bay., 487; 2 Bay., 338; 18 S. C., 175; 67 S. C., 320. *Accidental omission of word in charge shown by context not error:* 46 S. C., 554; 76 S. C., 284-86. *Specific charge should be asked for:* 49 S. C., 438; 34 S. C., 311; 58 S. C., 47; 38 S. C., 548; 60 S. C., 153.

June 28, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The defendant, George Kenny, was convicted at the November, 1906, term of the Court of General Sessions for Charleston County, of the murder of Herman G. Stello, a guardsman at the stockade where the convicts of the Charleston County chaingang were confined. The facts as proved by the State were as follows: On the 16th of August, 1906, Harmon Wilson, George Kenny and Alonzo Goodwin, in pursuance of a previously made plan, pretended that they were sick and unable to work, consequently, they with two other convicts, Clark and Duncan, were allowed to remain in the stockade, the balance of the gang going about two miles away to work on the State road. Some time after the departure of the gang, Wilson got the water bucket from the shelf, and going to the window, asked Stello, the guard, to hand them a bucket of water. In pursuance of this request, Stello was opening the door of the pen of the stockade when Wilson forced it back, struck him in the head with the bucket, and seized him by the throat. Immediately Kenny sprang upon him, and with a razor or some other sharp instrument, slashed his throat and neck so that he bled to death. They then thrust Stello into the pen, drove in the other two convicts who refused to attempt to escape, and two cooks who had been sleeping in the kitchen, locked the door, and after changing clothes, made their escape. A short time afterwards, Clark and Duncan, the two convicts, succeeded in breaking open the door of the pen and gave the alarm. Kenny was later captured at Greeleyville, and carried back to Charleston for trial. When Court convened, Wilson and Goodwin were still at large. Therefore, when the cause was called, the three having been indicted together, the Circuit Judge, on motion of the solicitor, granted a severance and Kenny was placed on trial alone. He had employed as his counsel D. B. Summers, a negro lawyer of Charleston, who upon the day set for the hearing of the cause appeared and informed the Court that on account of

indisposition he would be unable to conduct the case at that
time.  Thereupon the Court appointed Messrs. Whaley &
Bissell to defend Kenny, and postponed the day of trial so
as to give them time to prepare.  Kenny refused to accept
the services of counsel thus appointed, and on the day set
for the hearing, Summers appeared and conducted the case.

The first question raised by the exceptions is whether the
Circuit Judge erred in appointing Messrs. Whaley & Bissell
in the place of Summers, and afterwards reinstating Summers.  The right of persons indicted for capital
crimes to have counsel for their defense is now generally conceded.  In the United States, upon the
adoption of the Constitution, it was provided, among other
things, that the accused should have counsel for his defense
and most of the States following the example thus set have
incorporated a like provision in their Constitutions.  If the
defendant has employed counsel, it is not incumbent on the
Judge to examine into his proficiency or to give other counsel.  It is only in those cases where the accused is too poor
to provide counsel for himself that it is the duty of the Judge
to appoint.  In the case here under consideration, the Circuit
Judge was especially indulgent.  When he learned that
Summers would not appear he appointed two able lawyers to
try Kenny's case.  His refusal to accept their services was
his misfortune, and it was not the duty of the Judge to dispel
the prejudice created by his former counsel.  But it is
alleged that the Judge erred in deposing Summers.  While
we think he did not, *People* v. *Goldenson,* 13 Pac., 161, yet
even if he did, no harm came to the accused on account
thereof.  Messrs. Whaley & Bissell were never taken into
the confidence of Kenny, and in the true sense were never
his attorneys.  Summers, the defendant's retained counsel,
appeared on the day of the trial and conducted the case.  He
was not placed at a disadvantage, for he had already had
about two months to prepare his case and, granting that he
had been inactive during the interval between his removal

and the day of the trial, still he stood in exactly the same place as he did at the time the case was first called. It is possible that he even profited by the delay. We must, therefore, overrule this contention.

Nor do we find error or abuse of discretion on the part of the Circuit Judge in causing the case to be heard. It is well settled that continuances on any ground are discretionary with the trial Judge, the only limitation being that he shall not abuse that discretion. *State* v. *Murphy,* 48 S. C., 1, 25 S. E., 43; *State* v. *Atkinson,* 33 S. C., 109, 11 S. E., 693; *State* v. *Wyse,* 33 S. C., 582, 12 S. E., 556. And the rule is reasonable. He is present, familiar with the surrounding circumstances, and is in a position to know whether substantial justice can be had without a continuance. It is a right of the defendant to have a speedy trial, and often justice demands it. All that is required is that no right of the accused be denied, that he receive a trial according to law. Kenny had such a trial, and he has no right to complain.

It is urged, however, that the jury was prejudiced against Kenny by reason of his being accompanied by an armed guard. In the modern Court room, it is a rule that as little show of arms, etc., must be made as possible. In most jurisdictions handcuffs even are not allowed to be kept on the defendant during the trial. The presence of uniformed men, the display of arms, in fact, anything going to create the impression that the person in custody is an unusually dangerous criminal has its weight with the jury, and should not be allowed. But there was no such display here. It may be that there was one, or possibly more, guardsmen in the Court house, but had not Kenny demonstrated that it was necessary to guard him? Had he not escaped from the stockade more than once, and even then was on trial for a murder of the most heinous character? Granting, as his attorneys contend, that he had the appearance of a meek, timid little boy, yet he had indeed shown

himself to be a wolf in sheep's clothing, and worthy of watching. This contention must be overruled.

That exception should be taken to the severance seems to us unusual. So often is the necessity, so frequently is it done, and so numerous are the decided cases that it would seem no one would question its propriety, especially in causes such as the one now under consideration.

In many cases of murder and conspiracy it happens that some of the perpetrators are captured, while others more fortunate make their escape. Will it be said that because all could not be taken, those who are cannot be placed on trial and punished? Such a course would frequently defeat justice and often allow criminals to go free. Severence is discretionary with the Circuit Judge, and where he exercises his power, this Court will not interfere. *State* v. *Mitchell,* 49 S. C., 410, 27 S. E., 424; *State* v. *Wyse, supra; U. S.* v. *Ball,* 163 U. S., 662.

We now proceed to consider whether the Court erred in admitting Wm. Duncan's testimony as to language used by Wilson as he was driving Duncan and Clark into the pen.

Three persons were indicted for the commission of the crime. The effort of the State was to prove that there was a concerted plan between these persons, and that they aided and abetted each other in carrying it into effect. Although only one of the accused was on trial, yet it was necessary to bring out all of the particulars of the crime, in order to prove what part he took therein. If all of the acts and words of co-conspirators were excluded it would in many cases be impossible to bring home to the person being tried his own criminal acts. In such joint crimes the act of one party is the act of the other. 1 Greenleaf Evidence, section 111, and authorities. Kenny was taking part in the act in which the language objected to was used. He it was who, according to the testimony, locked the door immediately after Wilson had driven the convicts in. It was all one act and the Circuit Judge did not err in admitting the evidence.

16—77

The defendant in the next place contends that there was error in allowing Kenny to be questioned as regards to taking Captain Stello's watch, and then permitting the State to contradict his testimony.    To sustain their contention the case of *State* v. *Wyse,* 33 S. C., 582, is relied on.    The general rule is there well stated.    The present case, however, is distinguished in that here while the fact was in a sense collateral, yet it was a part of the whole transaction, it was an event going to connect Kenny with the crime.    In *State* v. *Wyse,* the question related to a fact entirely distinct, probably taking place years before.    The language used in *Shaffner* v. *Commonwealth,* 72 Pa. St., 65, correctly states the rule, and we adopt it here.    "It is a general rule that a distinct crime, unconnected with that laid in the indictment, cannot be given in evidence against a prisoner.    It is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely that he would commit another.    Logically, the commission of an independent offense is not proof, in itself, of the commission of another crime.    Yet it cannot be said to be without influence on the mind, for certainly, if one be shown to be guilty of another crime equally heinous, it will prompt a more ready belief, that he might have committed the one with which he is charged; it, therefore, predisposes the mind of the juror to believe the prisoner guilty.    To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have committed the other.    Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury."    The evidence here referred

to falls plainly under the exception, and is competent. It was introduced to connect Kenny with the crime, and its admission was no error.

There are a number of exceptions to the charge of the Court, but they raise the sole question whether after having granted a severance the Circuit Judge erred in holding that two other persons appeared in the indictment, and in charging the law as to persons acting in concert in pursuance of a common design to commit a crime. Plainly there was no error. Granting a severance does not strike the name of the party from the indictment, nor does it alter the charge made therein. As was said in *State* v. *McLendon,* 5 Strob., 85, "It is a well settled practice of the Court that the Judge has no power to order the names of any defendant struck from the indictment. Such a power would substitute the Judge for the jury in deciding a question of evidence. He may, however, at his discretion grant a separate trial of the parties." Such a severance only permits one or more of the parties to the action to be tried apart from his co-parties on the charge made in the indictment. All the facts of the crime must be shown and the part the person or persons on trial took therein. It is incumbent on the Court to give the jury the law applicable to the offense charged, and the duty then devolves upon them to apply the law to the facts proved and find a verdict as to the person being tried. The defendant's guilt or innocence will depend upon whether or not the jury are satisfied beyond a reasonable doubt that he committed the offense, or if he did not commit it, whether he was present aiding and abetting others. Taking the charge as a whole here, as it is well settled must be done, we can find nothing therein contrary to law nor prejudicial to the defendant. · The Court, after defining murder and manslaughter, proceeded to charge the law applicable to persons acting in concert to accomplish a common design. This was necessary, for although a severance had been granted, still the indictment charged joint murder. The charge given

left it with the jury to say whether Stello came to his death
by the hands of Kenny, or whether he was present taking
part in aiding and abetting some one else to commit the
crime.    Equally free were they so far as the charge was
concerned, to find that he was not guilty at all; that the
other parties committed the crime.    We must presume that
the matter was gravely and thoughtfully considered, and
that the jury were satisfied beyond all reasonable doubt of
defendant's guilt.    Such was the tenor of their verdict, and
there being no error of law, this Court cannot interfere.

It is the judgment of this Court that the judgment of the
Circuit Court be affirmed, and the case remanded so that a
new time may be set for carrying into execution the man-
date of the law.